UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-21668-CV-SCOLA
MAGISTRATE JUDGE REID

TONY E. NOVA,

      Plaintiff,

v.

P. HERON, ASST. WARDEN,
 et al.

      Defendants.

_____/

## REPORT OF MAGISTRATE JUDGE
## RE: DEFENDANTS' MOTION TO DISMISS
## [ECF NO. 55]

### I.    Introduction

Plaintiff, Tony E. Nova, filed this *pro se* civil rights action raising claims under 42 U.S.C. § 1983 against Defendants Heron and Harrison for their acts and omissions relating to an incident that occurred while he was housed at Everglades Correctional Institution (ECI). [ECF No. 12]. This Cause comes before the Court upon Defendants' Motion to Dismiss. [ECF No. 55]. Defendants assert the case should be dismissed for failure to exhaust administrative remedies under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) and because *Heck v. Humphrey*, 512 U.S. 477 (1994) bars relief. [*Id.*].

This case has been referred to the Undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive motions. *See* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b); and S.D. Fla. Admin. Order 2019-2.

The Court directed that certain claims proceed against Defendants, in their individual capacity: failure to prevent harm, retaliatory conduct, conspiracy to violate Nova's constitutional rights, and punitive damages. [ECF Nos. 18, 20]. After being served with the complaint, Defendants jointly filed a motion to dismiss this action. [ECF No. 55].

The Court has considered Nova's third amended complaint[1] [ECF No. 12]; Defendants' Motion to Dismiss [ECF No. 55], along with the supporting exhibits [ECF No. 55-1 through 55-4]; and Nova's response to the motion to dismiss with attached exhibits. [ECF No. 69].

For the reasons stated below, the Undersigned recommends that Defendants' Motion to Dismiss [ECF No. 55] be GRANTED and the instant case be DISMISSED.

---

[1] Nova initiated this proceeding in the Northern District of Florida on May 18, 2018. [ECF No. 1 at 29]. The district court ordered Nova to amend. [ECF No. 5, 9, 11]. Nova subsequently amended his complaint [ECF No. 7, 10, 12]. The initial complaint contains Nova's grievance exhibits. Where applicable, the Report cites to these exhibits.

## II.    Motion to Dismiss Standard of Review

### A.  A Failure to Exhaust Administrative Remedies Defense is Properly Raised within a Motion to Dismiss

The PLRA requires an inmate exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Gould v. Owens*, 383 F. App'x 863 (11th Cir. 2010). The requirement is mandatory; and there is no discretion to waive it. *Id*. The PLRA requires proper exhaustion, which means a prisoner must comply with the procedural rules and deadlines of the institution's grievance system. *Woodford v. Ngo*, 548 U.S. 81 (2006).

The current exhaustion requirement was "designed to reduce the quantity and improve the quality of prisoner suits, [and to afford] corrections officials an opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Porter*, 534 U.S. at 519. This process "might filter out some frivolous claims" and "an administrative record clarifying the controversy's contours could facilitate adjudication." *Id*.

There are no futility or inadequacy exceptions to the PLRA's mandatory exhaustion requirement. *Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998). A prisoner must exhaust all administrative remedies that are available before

filing suit, regardless of their adequacy. *Id*. at 1325-26. Even if an appeal would have been futile, the requirement that it be filed is not waived. *See Alexander*, 159 F.3d at 1325-26. And, "an untimely grievance does not satisfy the exhaustion requirement." *Johnson v. Meadows*, 418 F.3d 1152, 1153 (11th Cir. 2005). Moreover, if a prisoner "has not sought leave to file an out-of-time grievance, he cannot be considered to have exhausted his administrative remedies." *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999).

"Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . [it] is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (internal quotation marks and citation omitted). Although "motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) . . . federal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules." *Id*. at 1375. Rather than an adjudication on the merits, "exhaustion of administrative remedies is a matter of judicial administration" and should be decided on a Rule 12(b) motion to dismiss. *Id*. (citing *Johnson v. Meadows*, 418 F.3d at 1153-54).

Where exhaustion is treated as a matter in abatement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop the record." *Id.* (citing *Ritza*, 837 F.2d at 369).

The Eleventh Circuit has explained that:

> [w]hen deciding whether a prisoner has exhausted his remedies, the court should first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the plaintiff's version of the facts as true. If in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. If the complaint is not subject to dismissal at this step, then the court should make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Myles v. Miami-Dade County Corr. & Rehab. Dep't.*, 476 F. App'x 364, 366 (11th Cir. 2012) (citing *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

Nonetheless, "[a] remedy has to be available before it must be exhausted, and to be available a remedy must be capable of use for the accomplishment of its purpose. Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes, and so are not available." *Turner v. Burnside*, 541 F.3d at 1084 (internal citations and quotations omitted). "Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

5

### III.     Nova's Allegations in His Operative Complaint [ECF No. 12]

Nova alleges that in 2015, while housed at South Bay Correctional Institution (South Bay), inmates attacked him in retaliation for his role as a state witness two years earlier; he was then placed in administrative confinement, was denied protection, and, eventually, was transferred to ECI. [ECF No. 12 at 6-7]. Then, while housed at ECI, on September 13, 2017, gang-affiliated inmates attacked and stabbed him for the same reason -- his role as a state witness. [*Id*.]. While awaiting transport to the hospital, Nova told Harrison and Heron the reason for the attack [*Id*. at 7]. Nova alleges that when he returned from the hospital, Harrison and Heron interviewed him and advised him that they informed the prison gang about his statement, the gang denied involvement, and that he would now be "in big trouble" because he had lied to them. [*Id*. at 7]. Nova claims that he asked the two officers for protection. [*Id*.].

According to Nova, the next day he was placed in administrative confinement pending a disciplinary report for lying about the attack. [*Id*.]. He claims that, on September 19, Heron read the disciplinary report aloud in the prison hallway so that all inmates would be alerted and then whispered to Nova, "You dead." [*Id*. at 8]. On September 22, Harrison interviewed Nova and advised him that the prison gangs would attempt to murder him because "your story doesn't check out." [*Id*.]. Nova again asked for protection. [*Id*.]. Nova claims that on September 25, the institutional

classification team interviewed him. [*Id.*]. Nova explained his role as a state witness, his request for protection following the attack, and the recent stabbing at ECI. [*Id.*]. Nova's disciplinary hearing was held the following day; and he was sentenced to sixty days disciplinary confinement. [*Id.* at 9].

Within a few days, Nova was transferred to South Florida Reception Center disciplinary confinement; and, between October 9 and October 11, he was transferred to several other facilities, finally, arriving at Apalachee Correctional Institution. [*Id.*]. On January 5, 2018, Nova was again attacked at Apalachee. [*Id.*]. Nova asserts that Heron put him at risk by making the announcement to inmates and initiating a retaliatory prison transfer to Apalachee, a facility known for gang violence. [*Id.*].

Under the penalty of perjury, Nova addressed the exhaustion issue as follows:

> . . . *has exhausted all available administrative remedies* on or about 1/6/2017 Plaintiff requested protective management in writing, again protection . . . requested in writing on or about 9/13/2017, 9/19/2017, 9/22/2017, and 9/25/2017[.] Plaintiff filed a DC1-303 to the secretary's office on 10/5/2017 concerning protective management and a second DC1-303 on or about 10/24/2017[.] These DC1-303s concerned all of the issues . . . raised in this § 1983 complaint.

(emphasis added). [*Id.* at 12].

## IV.   Defendants' Defenses

### A.  Failure to Exhaust Administrative Remedies

7

The Court looks first to Defendants' factual allegations in the motion to dismiss.

### 1. Nova's Grievances

According to Defendants, Nova failed to file grievances in compliance with deadlines and procedures prior to filing his complaint and references the affidavit of Alan McManus and certain exhibits in support. [ECF No. 55]. The only grievance Nova appealed, 17-6-44491 was returned without action. [ECF No. 55 at 2; *see also* ECF No. 55-1]. This grievance, dated October 24, 2017, is beyond the twenty-one-day time limit to file a grievance. [*Id*.]. The grievance was returned without action on November 29, 2017. [*Id*.].

Nova filed four formal grievances between 2016 and 2019, and fifteen informal grievances since July 2015, none of which addressed Nova's allegations set forth in his complaint.[2] [*Id*.; ECF No. 55-1 at 1-6].

---

[2]    On March 29, 2018, and April 15, 2018, Nova filed administrative appeals #1803-251-233 and #18-6-17268, respectively, requesting a religious diet. The first was returned by the FDC [*Id*. at 33-34]; the second was denied with a recommendation to file the proper application with the chaplain. [*Id*. at 31-32].

On October 31, 2018, Nova was noticed that he received a publication, which was impounded. [*Id*. at 9-10]. On November 5, 2018, Nova filed administrative appeal #18-6-48612 with the FDC regarding the impounding of a publication entitled "Under Lock and Key." [*Id*. at 8]. On December 13, 2018, Nova's appeal was denied because the material was not admissible. [*Id*. at 7, 18]. Nova filed a similar administrative appeal #18-6-51669 regarding the same publication but one with a later publication date. [*Id*. at 20-26].

On December 7, 2018, Nova was noticed that he received the publication "Prison Health News, which was impounded. [*Id*. at 13]. On December 13, 2018, Nova filed administrative appeal

2. <u>Grievance Procedure Pursuant to the Florida Administrative Code</u>

Defendants assert that during the time in question, Nova was in the custody of the Florida Department of Corrections (FDC); therefore, he was entitled to protections afforded by the Florida Administrative Code. [ECF No. 55 at 6-10]. *See* Fla. Admin. Code § 33-103.001.[3]

The first step in the grievance procedure requires the inmate to submit an informal grievance using a DC6-236 form. *See id.* § 33.103.002(12); *id.* § 33.103.011(1)(a). The Administrative Code provides that where the grievance is an emergency or one of reprisal, an inmate "may skip this step and initiate the process at the formal institutional level." *Id.* § 33-103.005(1).

Informal grievances "must be received within 20 days of when the incident or action being grieved occurred unless the inmate" seeks and receives approval for a 45-day extension. *Id.* § 33-103.011(1)(a). Formal grievances "must be received no later than 15 calendar days" from the time of the response to an informal grievance or the date of the incident. *Id.* § 33-103.011(1)(b). A direct grievance to "the Office of the Secretary must be received within 15 calendar days from the date" of the incident. *Id.* § 33-103.011(1)(d). The time limits may be extended "when it is clearly

---

#18-6-53747, but it was denied on January 11, 2019, because the material was not admissible. [*Id.* at 11-12].

[3] To maintain brevity, the Report cites directly to the Florida Administrative Code rather than the Defendants' motion to dismiss. Defendants' motion contains accurate summaries of and citations to the Florida Administrative Code. [ECF No. 55 at 6-10].

demonstrated by the inmate to the satisfaction of the reviewing authority . . . or the Secretary that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." *Id*. § 33-103.011(2).

The FDC has ten calendar days from the date of receipt to respond to informal grievances, twenty calendar days from the date of receipt to respond to formal grievances, and thirty calendar days from the date of receipt to respond to grievance appeals and direct grievances to the Office of the Secretary. *Id*. § 33-103.011(3)(a)-(c). If the FDC does not timely respond to the grievance, the inmate "shall be entitled to proceed with judicial remedies as he would have exhausted his administrative remedies." *Id*. § 33-103.11(4). An inmate may appeal if he "feels [a] grievance has not been satisfactorily resolved during the formal grievance procedure." *Id*. § 33-103.007(1). To properly exhaust his administrative remedies, an inmate must appeal the denial of a grievance. *Lyons v. Trinity Servs. Grp., Inc*., 401 F. Supp. 2d 1290, 1295 (S.D. Fla. 2005). The inmate properly appeals by completing a Form DC1-303 "within 15 calendar days from the date of the response to the formal grievance." Fla. Admin. Code §§ 33-103.006(1), 33-103.011(1)(c). Late appeals or those not in compliance with the Administrative Code are returned to the inmate without further processing. *Id*. § 33-103.014(1).

According to Defendants, none of Nova's grievances, formal or informal, were timely filed and exhausted. [ECF No. 55 at 10]. There is no record that Nova ever attempted to refile or seek an extension and there was no final denial of a relevant grievance by FDC. [*Id.*].

3. <u>Nova's Response and Facts Pertinent to Exhaustion</u>

On October 24, 2017, Nova filed an administrative appeal #17-6-44491 to FDC seeking protective management for an incident that occurred September 13, 2017. [ECF No. 55-1 at 27-29]. October 24 was more than fifteen calendar after the date that Heron read the disciplinary report aloud in the prison hallway (September 19), when the classification team interviewed Nova (September 25), and the date of Nova's disciplinary hearing (September 26). By that time, Nova had "just been transferred to a different institution," namely Apalachee. [*Id*. at 28]. However, Nova made no allegation in the grievance that Heron or Harrison were somehow responsible for putting him at further risk following the stabbing or were somehow retaliating against him for filing a grievance. [*Id*. at 27-29]. Rather, Nova admitted that he lied to Heron about the incident because he was scared, was issued a disciplinary report for lying to staff, and was "given 60 days D.C. Time." [*Id*. at 28].

Nova asserts in his response to Defendants' Motion to dismiss that it was not readily apparent to him that Defendants' actions were retaliatory and deliberately indifferent to his need for protection; therefore, he could not file a grievance before

October 5, 2017. [ECF No. 69 at 5]. Nova further claims he filed a grievance on October 5, which was ignored, but provides no evidence of this grievance nor explanation of what that alleged grievance contained.[4] [*Id*. at 8-10]. He only states that "both concern[ed] protective management issues." [*Id*. at 8]. Nova claims that because he received no response to the October 5 grievance, he filed the October 24 grievance. [*Id.*]. His October 24 grievance, however, makes no mention of the October 5 grievance. [ECF No. 55-1 at 27-29]. Nova failed to exhaust by filing the October 24 grievance for two reasons: (1) he did not seek to file an out-of-time grievance, *Harper v. Jenkin*, 179 F.3d at 1312, and (2) more importantly, his grievance makes no mention of any act or omission by Defendants.

On April 2, 2018, Nova filed an administrative appeal #18-6-15446 to FDC seeking "protective management" because he was physically attacked on January 9, 2017, at South Bay; on September 13, 2017, at ECI; and on January 6, 2018, at Apalachee. [*Id*. at 16-17; *see also* Plaintiff's exhibit at ECF No. 1 at 37-39]. He claimed that he and other prisoners were being "located, stalked, and attacked by various prison gangs." [*Id*. at 17]. The same day, Nova filed administrative appeal

---

[4] Plaintiff is cautioned that arguments not raised by Plaintiff before the magistrate judge cannot be raised for the first time in objections to the undersigned's Report. *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). Here, if Plaintiff attempts to raise a new claim or argument in objections, the Court should exercise its discretion and decline to address the newly-raised arguments.

#18-6-15447 making nearly identical allegations and seeking protective management. [*Id*. at 44-45; *see also* Plaintiff's exhibit at ECF No. 1 at 34-36]. Nova made no mention of Defendants in either grievance. FDC "returned" the appeals "without action" because Nova did not submit a "grievance at the appropriate level at the institution." [*Id*. at 15, 43]. Nova's grievances were both untimely and failed to identify Defendants for any wrongdoing. Thus, Nova has failed to exhaust his administrative remedies with these grievances.

Finally, on June 29, 2019, after Nova initiated the instant proceeding, he filed administrative appeal #19-6-25126 outlining that he had initiated this § 1983 action. [*Id*. at 41]. Nova repeated that he had been a state witness, was attacked at South Bay, was stabbed five[5] times at ECI by the Latin Kings, and was transferred to Apalachee, where he was attacked again. [*Id*.]. Nova asked to be transferred to a protective management unit "out of Florida" and "back to Washington state." [*Id*. at 42]. Again, Nova made no mention of his claims against Defendants. [*Id*. at 41-42]. FDC "returned" the appeal "without action" because Nova did not first submit the grievance at the appropriate level or failed to provide a reason for not following the proper procedure. [*Id*. at 40].

---

[5] Nova's own medical record exhibits indicate that he was stabbed three times during the attack on September 13, 2017. [ECF No. 1 at 45, 47-49].

In his response, Nova also claims that he was not required to file informal grievances because his claim was an emergency, therefore, he could file grievances directly with the Secretary. [ECF No. 69 at 7-8]. This is of no consequence because the issue is not whether Nova was required to first file an informal grievance. What is relevant is that – when it comes to Nova's allegations against the Defendants – he did not file any timely grievance, did not seek to file an untimely grievance, and did not file any grievance where he identified any acts or omissions by Defendants that amount to the constitutional violations he alleges in this § 1983 proceeding. Accordingly, Nova's case fails because he failed to exhaust administrative remedies.

## B. *Heck Doctrine and Retaliation Claims*

Defendants assert that on September 13, 2017, Harrison interviewed Nova while he was in medical with a laceration to his back. [ECF No. 55 at 3]. Nova informed Harrison that "the Latin Kings assaulted him outside of D Dorm on the walkway after the morning meal while walking back to E dorm." [*Id*.]. Harrison reviewed the cameras and determined that Inmate Dennison was the assailant. [*Id*.]. Nova admitted that he lied about the assault by the Latin Kings. [*Id*.]. Nova also admitted that Dennison attacked him for Inmate Handley, who was extorting him for a debt owed. [*Id*.]. The Inspector General received the MINS report, but Nova did not want to pursue the case criminally. [*Id*. at 4]. A disciplinary report was issued to Nova for lying to officers about the incident. [*Id*.]. Defendant's assert that Nova's

14

complaint is a direct contradiction of the disciplinary team's findings; therefore, his claims are barred by the *Heck* Doctrine. [*Id.*].

In his response, Nova claims that *Heck* is inapplicable to his case because he is not challenging the validity of the disciplinary hearing. [ECF No. 69 at 13-14]. He claims he was punished when he was denied protective management and transferred to another prison as punishment for filing a grievance about being a targeted by inmates. [*Id.* at 14]. But Nova's own exhibit contradicts this assertion. According to the MINS incident report, on September 27, 2017, Nova was placed in protective management and his suspected attackers were placed in administrative confinement pending an investigation. [*Id.* at 27].

Under *Heck v. Humphrey*, a prisoner may not bring a claim for damages under 42 U.S.C. § 1983 or *Bivens* if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction. *Heck*, 512 U.S. 477, 487 (1994). As the Supreme Court of the United States has noted, the most obvious example of an action barred by *Heck* is one in which the plaintiff actually seeks damages directly attributable to conviction or confinement. But even when the plaintiff does not seek such damages, his suit may be barred if, for example, he must negate an element of the offense of which he has been convicted in order to prevail, or if he contends that the statute under which he was convicted is unconstitutional. *Hughes v. Lott*, 350 F.3d 1157, 1158 (11th Cir. 2003). "The Court's purpose was to limit the

opportunities for collateral attack on state court convictions because such collateral attacks undermine the finality of criminal proceedings and may create conflicting resolutions of issues." *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (internal citations omitted). Thus, unless the plaintiff-prisoner can demonstrate that the conviction or sentence has already been invalidated, the complaint must be dismissed. *Heck*, 512 U.S. at 487.

*Heck* also applies to a disciplinary conviction. *Edwards v. Balisok,* 520 U.S. 641, 646-48 (1997); *Roberts v. Wilson,* 259 F. App'x 226, 229 (11th Cir. 2007). However, *Heck* does not apply when the action does not implicate the validity of a conviction or the duration of the confinement. *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004). The First Amendment forbids prison officials from retaliating against inmates for filing grievances about the conditions of confinement. *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011). "To state a claim for retaliation, a prisoner must allege that '(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action [the disciplinary punishment] and the protected speech [the grievance].'" *Allen v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 836, 839-40 (11th Cir. 2014) (citing *O'Bryant*, 637 F.3d at 1212).

16

"When an inmate alleges retaliation, he does not need to demonstrate that the disciplinary conviction is overturned." *Woods v. Smith*, 60 F.3d 1161, 1164-65 (5th Cir. 1995). This is necessarily so because a retaliation claim does not focus on the merits of the proceeding but on the interference and obstruction of the exercise of a constitutional right. *Id*. However, the Eleventh Circuit maintains that where an inmate is found guilty of the charged offense at his disciplinary hearing, he cannot state a claim for retaliation based on that incident. *Allen*, 578 F. App'x at 840 (citing *O'Bryant*, 637 F.3d at 1215).

Here, *Heck* does not necessarily bar Nova's claim because Nova is not challenging the findings made in the disciplinary hearing. Rather, Nova claims that the disciplinary report was issued in retaliation for submitting a grievance about the attack he suffered. To that end, Nova's claim does not attack the validity of his conviction. Still, it is true that the Defendants' initiated an investigation, and later issued a disciplinary report based on Nova's false statements.

As previously narrated, the Florida Administrative Code outlines the grievance procedure. When an inmate makes a good faith use of the grievance process it should not result in reprisal or retaliation. Fla. Admin. Code §§ 103.002(10), 103.017(1). In fact, in such cases, inmates have a remedy: a grievance of reprisal. *Id*. However, an inmate is subject to disciplinary action if he "knowingly includes false . . . statements in the grievance or any of the attachments."

17

Fla. Admin. Code § 33-103.017(2). Inmates are subject to a maximum of sixty days disciplinary confinement for "lying to staff member[s] or others in official capacity, or falsifying records." Fla. Admin. Code § 33-601.314(9)-(10).

Here, Nova lied to prison officials regarding the details of the stabbing – who was responsible and where it occurred. In his response, Nova admits he "entered a plea of guilty . . . with an explanation." [ECF No. 69 at 6, 22; *see also* ECF No. 55-2 at 1]. He admits that he made false statements, albeit out of fear. Nova's false statements warranted the disciplinary proceedings; thus, he cannot demonstrate it was retaliatory conduct. It is not *Heck* that bars Nova's claim; rather, he fails to state a claim based on a lack of a causal connection between the grievance(s) he filed and the alleged retaliation. More importantly, as outlined above, Nova's claim fails because he failed to exhaust his administrative remedies. Nova filed no grievance against Defendants on any matter, let alone one alleging retaliatory conduct. For these reasons, Nova's retaliation claims fail; the motion to dismiss should be GRANTED.

## V.    Conclusion

Nova made conflicting and vague assertions in his sworn complaint regarding his grievance attempts. [ECF No. 12]. His response to the motion to dismiss amounts to an admission that he failed to exhaust his administrative remedies or is otherwise unsupported. [ECF No. 69]. Here, the Court is not obligated to credit self-serving

18

statements by a plaintiff over the sworn statements of officials. *Vaughn v. Scroggins*, 2008 U.S. Dist. LEXIS 87179, 2008 WL 4767496 (M.D. Ala. Oct. 28, 2008) (a plaintiff relied solely on self-serving statements that he complied with the grievance procedure, but the forms may have been avoided or abandoned. Without providing any record or documentation, plaintiff failed to demonstrate that he exhausted his administrative remedies).

There is no record that Nova filed any written grievances about his allegations against Defendants, although he repeatedly reported the stabbing incident. Nova did not seek any extension of time and did not pursue any appeal of any grievance against Defendants, which is required to exhaust his administrative remedies. Nova knew the grievance procedure and used it on multiple occasions before and after the alleged incident. Ultimately, Nova's failure to exhaust is fatal to the instant case.

## VI.    Recommendation

Based on the foregoing, it is recommended that Defendant's Motion to Dismiss for failure to exhaust administrative remedies [ECF No. 55] be GRANTED and the case be DISMISSED and CLOSED.

Objections to this Report may be filed with the District Court Judge within fourteen days of receipt of a copy of the Report. Failure to do so will bar a de novo determination by the District Court Judge of anything in the recommendation and

will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28

U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 3rd day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc:     Tony E. Nova
        627680
        Wakulla Correctional Institution-Annex
        Inmate Mail/Parcels
        110 Melaleuca Drive
        Crawfordville, FL 32327
        PRO SE

        Caryn Siperstein Klein
        Office of the Attorney General
        110 S.E. 6th Street, 10th Floor (Civil)
        Fort Lauderdale, FL 33301
        Tel: 954-712-4673
        Email: caryn.sipersteinklein@myfloridalegal.com